UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MICHAEL L. HOLLOWAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNION PACIFIC RAILROAD CO., | ) |
| | ) |
| Defendant. | ) |

Civil Action No. 4:15-cv-01741-HEA

## DEFENDANT UNION PACIFIC RAILROAD COMPANY'S
## MOTION FOR PROTECTIVE ORDER

Defendant Union Pacific Railroad Company moves for the entry of a protective order pursuant to Federal Rule of Civil Procedure 26(c) limiting the scope of Plaintiff Michael Holloway's proposed deposition of Union Pacific employee Nels Johnson. Union Pacific has no objection to producing Johnson to testify about matters relevant to plaintiff's claim under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et. seq.* ("FELA"). However, plaintiff should not be permitted to question Johnson about irrelevant and preempted matters, such as Johnson's so-called "management style," that have no connection to this personal injury claim. Union Pacific submits the following memorandum in support of this motion.[1]

### Introduction

Plaintiff in this case seeks damages for a traumatic injury to his back that he claims to have suffered while working for Union Pacific on December 17, 2012, in Scott City, Missouri. The only claim plaintiff asserts in his one-count complaint is a claim under the FELA that his

---

[1] As discussed in more detail below, counsel for Union Pacific attempted to resolve this dispute pursuant to Rule 26(c) and E.D.Mo. L.R. 37 – 3.04, but was unsuccessful.

injuries resulted from Union Pacific's negligence. Plaintiff asserts no other cause of action, *i.e.*, no whistleblower or retaliation claim under the Federal Railway Safety Act ("FRSA").

At issue in this motion is plaintiff's proposed deposition of Nels Johnson. Johnson was one of plaintiff's supervisors at the time of the incident in which plaintiff claims to have been injured. He is an employee of Union Pacific. Plaintiff originally noticed the deposition for August 24, 2016, although he later agreed to postpone the deposition pending a ruling on this motion.[2] *See* Notice of Deposition (attached as Ex. A); 8/11/16 email from W. Hakes to L. Jungbauer (attached as Ex. B).

Although plaintiff's FELA claim is the only claim he has asserted in this case, plaintiff has made clear that he does not intend to limit his deposition of Johnson to matters relevant to his FELA claim. Instead, both before this litigation began and since it was commenced, plaintiff has made a number of assertions about Johnson's so-called "management style," Johnson's relationship with other employees he supervised (not only plaintiff), and other labor relations matters. Indeed, he served requests for admissions that included more than twenty requests directed specifically to such matters. Counsel for plaintiff has also stated in correspondence that he intends to question Johnson about numerous irrelevant matters. *See* 6/20/16 email from L. Jungbauer to N. Lamb and W. Hakes (attached as Ex. C).

Because plaintiff intends to pursue these matters at a deposition of Johnson, Union Pacific seeks a protective order limiting the scope of that deposition. Union Pacific has no

---

[2] Although plaintiff served Union Pacific with the notice of deposition, he did not serve Johnson with a subpoena. Consequently, since Johnson is not a corporate representative, officer, director, or managing agent, the notice alone is not sufficient to compel Johnson's attendance at the proposed deposition. *See* Fed. R. Civ. P. 37(d); *see also* § 2103 Persons Subject to Examination—Corporations and Other Organizations, 8A Fed. Prac. & Proc. Civ. § 2103 (3d ed.) ("Except where the employee has been designated by the corporation under Rule 30(b)(6), an employee is treated in the same way as any other witness. His or her presence must be obtained by subpoena rather than by notice ....").

objection to producing Johnson to testify about his knowledge of the incident that plaintiff claims resulted in his injury or related matters. But plaintiff should not be permitted to conduct a fishing expedition into other, unrelated matters.

Specifically, Johnson's management style and related issues are irrelevant to the issues to be decided in this FELA case. Plaintiff has not filed a claim asserting that Johnson's behavior violated the anti-retaliation provision of the FRSA—and in fact he is time-barred from doing so. *See* 49 U.S.C. § 20109(d)(1). Additionally, even if Johnson's management style or related issues were otherwise relevant to a claim at issue in this case, they would be outside the scope of discovery since they relate to labor matters and are therefore governed by a collective bargaining agreement and preempted by the Railway Labor Act, 45 U.S.C. § 151, *et seq.* ("RLA").

## Factual Background

Plaintiff filed his complaint in this case on November 23, 2015, seeking damages under the FELA for an injury to his back that he claims to have suffered while working for Union Pacific. *See generally* Compl. He claims to have suffered the injury while moving a generator from Union Pacific's depot in Scott City, Missouri, to another building. *See* Compl. ¶¶ 8-9. Plaintiff claims that the incident occurred on December 17, 2012. *Id.*

At his deposition, plaintiff claimed he had been told to move several generators out of the depot at Scott City because they contained gasoline and could not be kept in an occupied building. Holloway Dep. 226:14-227:18, 275:20-276:8 (relevant excerpts attached as Ex. D). Plaintiff testified that his supervisor Nels Johnson was the person who first told him that the generators needed to be moved. *Id.* Plaintiff testified that Johnson first told him to move the generators in June or July of 2012, which was about six months before plaintiff's incident. *Id.*

6400678

Although plaintiff claims that Johnson was the person that told him that the generators needed to be moved, plaintiff admitted that that was the extent of Johnson's involvement in this incident.  Plaintiff admitted that Johnson never gave him specific instructions about how or when to move the generators, never told plaintiff that he could not get help in moving them and was not even present on the day of plaintiff's alleged incident:

> Q.    … Did Mr. Nels Johnson personally tell you that you had to move the generators from the depot? Yes or no?
>
> A.    No.
>
> Q.    Did Mr. Nels Johnson tell you that you had to move a generator by yourself?
>
> A.    No.
>
> Q.    Did Mr. Nels Johnson tell you that you could not get help to move the generators?
>
> A.    No.
>
> Q.    Did Mr. Nels Johnson tell you not to get a ramp?
>
> A.    No.
>
> Q.    Did Mr. Nels Johnson tell you where to park?
>
> A.    No.
>
> Q.    Did Mr. Nels Johnson tell you not to try to obtain a dolly?
>
> A.    No.
>
> Q.    Did Mr. Nels Johnson tell you not to try and obtain something with a boom?
>
> A.    No.
>
> Q.    Did Mr. Nels Johnson tell you not to try to obtain a forklift?
>
> A.    No.
>
> Q.    Did Mr. Nels Johnson tell you to pull the generator into the cabinet the way you did?

A.      No.

Q.      Did Mr. Nels Johnson tell you where to park?

A.      No.

Q.      Did Mr. Nels Johnson tell you how to do any aspect of moving the generator on 12/17/'12?

A.      On that day?

Q.      Yes.

A.      No.

Q.      In fact, Mr. Nels Johnson wasn't present in Scott City on that day, correct?

A.      No.

Q.      Is that correct?

A.      No, he wasn't present that day.

Q.      Would it be fair to say that all the decisions on how this generator was going to be moved and by whom were decisions made by you?

A.      Yes.

*Id.* at 333:8-335:2. As plaintiff summed up at his deposition:

Q.      … So it's fair to say then that Mr. Johnson didn't tell you any day they had to be moved on, correct?

A.      According to him, they should have already been moved.

Q.      …But did he give you any particular day or date that they had to be moved.

A.      No.

Q.      …Did he give you any particular manner in which they had to be moved?

A.      No.

Q.      Did he give you any procedure on how to move them?

A.      No.

Q.      Did he in any way indicate that you could not get help in moving them?

A.    No.

*Id.* at 288:21-289:12.

In attempting to implicate Johnson in this case, plaintiff has implied that he was under pressure from Johnson to get the generators moved. According to plaintiff, Johnson met with him on at least two occasions in the months leading up to his alleged incident. In the first such meeting, which plaintiff claims took place on September 26, 2012, plaintiff claims that Johnson told him that that he "wasn't doing [his] job" and that "anything and everything that was wrong was [his] fault." *Id.* at 108:20-112:6, 124:15-25, 140:20-23, 199:8-13. Plaintiff also claims that he was given a list of items he was supposed to do, although moving the generators was not included and was not discussed. *Id.* at 225:10-25, 231:25-232:6.

The second meeting, according to plaintiff, occurred on Thursday, December 13, 2012. *Id.* at 271:2-273:1. Plaintiff believed that he was being disciplined at this time. *Id.* He claimed that Johnson told him about that he was not doing his job correctly and that he was going to be disqualified (*i.e.*, fired) in thirty days. *See id.* at 273:2-274:13. One of the things that plaintiff was "doing wrong" included his failure to move the generators, as he had been instructed six months earlier. *Id.* at 274:3-7, 276:17-22.

However, despite the alleged threat by Johnson to disqualify him, plaintiff admitted that, at the actual time he suffered his injury, he was moving at a "safe speed" and "wasn't trying to rush." *Id.* at 318:5-9. Indeed, after plaintiff's meeting with Johnson on Thursday, December 13, plaintiff had taken a scheduled vacation day the next day and then taken his usual days off on Saturday and Sunday before returning to work on Monday. *Id.* at 293:7-24. Moreover, when plaintiff started work on Monday, December 17, he did not plan on moving any generators. *Id.* at 295:23-25. It was only after taking care of a few other tasks that morning that he decided that he would try to move one of the generators by himself. *See id.* at 299:2-18. He claimed that he did

so because he was worried about being disqualified and he wanted to be able to say that he had at least started on the task of moving the generators. *Id.* at 299:19-12. At that time, plaintiff thought it was safe for him to move the generator by himself. *Id.* at 253:2-9, 305:5-11.

Separate from Johnson's limited involvement in the actual event at issue in this case, plaintiff has also made a number of complaints about Johnson's overall work as a supervisor. In a recorded interview he provided to a Union Pacific claims representative before filing suit, he claimed that he did not get along with Johnson from the day he met him, that Johnson often made threats or harassed plaintiff and others, and that Johnson used offensive language. Recorded Interview with M. Holloway at 52:19-24, 123:20-126:11, 137:7-13, 142:2-14 (relevant excerpts attached as Ex. E). At his deposition, plaintiff claimed that "it was personal, [Johnson] was out to get [plaintiff]." Holloway Dep. at 281:10-16.

Beyond these personal complaints, plaintiff has tried to rely on the alleged complaints of other employees as well. He described in both his recorded interview and deposition, for example, that he and a number of other Union Pacific employees signed a petition complaining about Johnson, which they submitted to their union and which was eventually submitted to labor relations personnel at Union Pacific in September 2011. Recorded Interview at 56:23-59:10; Holloway Dep. 81:21-82:2. Plaintiff, however, admitted that, after this petition was submitted, no further complaints about Johnson were made during the fifteen (15) month period between that petition and plaintiff's incident more than one year later. Holloway Dep. 165:25-168:25 Further, plaintiff claimed that Johnson's management style led to the injuries of two other Union Pacific employees—although again, plaintiff was forced to admit that in fact did not know the circumstances of the injuries of those two employees or whether Johnson was involved in any way. *Id.* at 205:5-208:15.

Since filing suit, plaintiff has pursued irrelevant discovery directed toward these matters. Most notably, plaintiff served requests for admissions that contained more than twenty requests directed toward Johnson's alleged conduct. *See* Pl.'s First Request for Admissions, at Request Nos. 30-52 (attached as Ex. F). These requests (which made up almost half of the total number of requests plaintiff served) took issue with, among other things, Johnson's "management style," alleged harassing or threatening behavior by Johnson, and alleged collateral complaints made to Union Pacific about Johnson's behavior and "management style." *See id.* They also addressed plaintiff's claim about the submission of a petition from numerous employees complaining about Johnson's behavior and asserted that complaints had been filed against Johnson under the FRSA. *See id.*

Plaintiff's interrogatories and requests for production sought similar information. Both the interrogatories and requests for production sought information about Johnson's "management style" and related issues. *See* Pl.'s First Set of Interrog., at Interrog. Nos. 11-13 (attached as Ex. G). Pl.'s First Set of Requests for Production, at Request Nos. 2, 11-17, 20-21 (attached as Ex. H). Plaintiff also requested Union Pacific to produce, among other things, Johnson's personnel file, disciplinary file, "daily diary," and related documents. *See* Ex. H at Request Nos. 2, 12, 20.[3] Finally, as described above, plaintiff has now noticed the deposition of Johnson and indicated that he wishes to pursue these types of issues at the deposition.

Pursuant to Rule 26(c) and E.D.Mo. L.R. 37 – 3.04, counsel for Union Pacific attempted to resolve this dispute regarding the scope of plaintiff's proposed deposition of Johnson. Specifically, counsel for defendant William Hakes spoke by phone with counsel for plaintiff

---

[3] Union Pacific responded to all of these discovery requests by objecting on the basis of relevance, among other things. *See* Def.'s Ans. to Pl.'s First Set of Interrog. (attached as Ex. I), Def.'s Resps. To Pl.'s First Set of Requests for Production (attached as Ex. J); Def.'s Resp. to Pl.'s First Set of Request for Admissions (attached as Ex. K).

Louis Jungbauer about the issue on August 23, 2016, at approximately 3:15 p.m. Despite counsel for defendant's sincere efforts to resolve the dispute, however, he was unable to reach accord. Plaintiff's counsel instead made clear that he would attempt to elicit such information at Johnson's deposition unless directed otherwise by an order of the Court.

### Argument

Federal Rule of Civil Procedure 26(b)(1) limits the scope of discovery to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." For this reason, "discovery may not be had on matters irrelevant to the subject matter involved in the pending action." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999). In addition, "[a]lthough the federal rules permit liberal discovery, [such discovery] 'is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes.'" *Id.* (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)). Discovery may not be used to conduct "fishing expeditions." *Heller v. HRB Tax Grp., Inc.*, 287 F.R.D. 483, 485 (E.D. Mo. 2012) (internal quotations omitted). This is particularly true with regard to depositions; as "experience" has shown, "pretrial discovery by depositions ... has a significant potential for abuse." *Miscellaneous*, 197 F.3d at 925 (quoting *Seattle Times*, 467 U.S. at 34).

"Because of liberal discovery and the potential for abuse, the federal rules 'confer[ ] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required.'" *Id.* (quoting *Seattle Times*, 467 U.S. at 36). More specifically, under Rule 26(c), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). If good cause is shown, the court may enter an order "to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense." *Id.* Protective orders under Rule 26(c) may include, among others, orders "forbidding the disclosure or discovery" and orders "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A) and (D).

Here, as described below, issues regarding Johnson's management style, alleged complaints about that management style, and related issues are not relevant to the issues to be determined in this case. Plaintiff's *only* claim is an FELA claim; he has not made a claim (nor could he, at this point) asserting that Johnson's alleged behavior violated the FRSA's whistleblower provision. Additionally, even if evidence of Johnson's management style was otherwise relevant, it would be inadmissible because matters related to labor relations are preempted by the RLA.

**A.      Evidence regarding Johnson's management style or related issues are irrelevant.**

As described above, plaintiff's sole claim for relief is his claim under the FELA. To recover under that claim, plaintiff must establish the common-law elements of a negligence claim: duty, breach, injury, and causation. *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 538, 114 S. Ct. 2396, 2401–02, 129 L. Ed. 2d 427 (1994); *Brooks v. Union Pac. R. Co.*, 620 F.3d 896, 897 (8th Cir. 2010). The essence of plaintiff's complaint is he tripped while carrying a generator. *See* Compl. ¶¶ 8-9. More specifically, plaintiff complains that the primary causes of his fall were Johnson's instructions to move the generator and Union Pacific's failure to provide sufficient help or equipment to do the work. *See id.*; *see also* Holloway Dep. 327:9-14.

Johnson's management style or alleged complaints about his management style have nothing to do with any of the elements of his claim. Johnson is not a defendant. As discussed above, he was not present at the time of plaintiff's incident, and he did not give plaintiff any specific instructions about moving the generators. Holloway Dep. 288:9-20, 334:19-23. Nor did

he tell plaintiff that plaintiff could not have other people help him or that plaintiff could not use a ramp, dolly, or similar device to assist him. *Id.* at 333:8-18. Plaintiff admitted that he himself was a supervisor and had the ability to ask for help and to get additional equipment. *Id.* at 162:5-164:18. Johnson's only involvement was telling plaintiff that the generators needed to be moved because they presented a safety hazard.

Plaintiff cannot legitimately suggest that Johnson's alleged threat to disqualify him put him under pressure or caused him to rush. Plaintiff did not attempt to move the generator until several days after his last conversation with Johnson. *See id.* at 293:7-24, 299:2-18. More importantly, plaintiff admitted that he was moving at a safe speed and was not rushing at the time he suffered his alleged injury. *Id.* at 318:5-9.

Plaintiff clearly wishes to turn the tables on Johnson and use the deposition as an attempt to embarrass him or get back at him for the perceived ill treatment he believes he received from Johnson. But this is not permitted under Rule 26. Johnson's management style simply has nothing to do with whether Union Pacific breached a duty to plaintiff to provide a safe place to work on December 17, 2012 in Scott City, Missouri, or whether plaintiff suffered damages as a result of the alleged breach. Thus, plaintiff should not be permitted to abuse the discovery process by conducting a fishing expedition into these collateral matters during Johnson's deposition. *See Miscellaneous*, 197 F.3d at 925-26 (affirming entry of protective order precluding deposition of nonparty where party seeking deposition intended to ask about witness's sexual relationships and other matters that had limited relevance at best); *Heller*, 287 F.R.D. at 485 (prohibiting party from deposing corporate representative about matters outside the scope of the pleadings); *see also Davis v. Union Pac. R. Co.*, No. 4:07CV00521 BSM, 2008 WL 3992761, at *1–3 (E.D. Ark. Aug. 26, 2008) (limiting the scope of an FELA's deposition of a

railroad's corporate representative by prohibiting questioning regarding matters not related to the time and place where the plaintiff worked).

**B.      Plaintiff has not and will not be able to file a whistleblower claim under the FRSA.**

Under the anti-retaliation provision of the FRSA, a railroad cannot "discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done" for the purpose of engaging in any of the specified protected activities. 49 U.S.C. § 20109(a). Protected activities include, among other things, refusing to violate federal safety statutes or rules, filing a complaint applicable to railroad safety or security, or notifying or attempting to notify a railroad of a work-related injury.

In this case, given the scope of discovery directed to Johnson's alleged treatment of him, *e.g.*, the requests for admissions, plaintiff appears to be trying to establish a violation of this provision. But even if this is his intent, it is to no avail. Plaintiff has not actually asserted a claim under the FRSA—again, the only claim he has asserted in this case is an FELA claim.

What's more, even if plaintiff wanted to make a claim under the FRSA, it would be too late. The anti-retaliation provision of the FRSA provides that an employee alleging a violation of the provision must submit a petition for relief with the Secretary of Labor within 180 days of the event giving rise to the complaint. 49 U.S.C. § 20109(d)(1).[4] Since plaintiff here did not submit such a petition within the time permitted, and, in fact, has never submitted such a petition, he is now time-barred from pursuing such a claim.

---

[4] Under 49 U.S.C. § 20109(d)(3), if the Secretary does not issue a final decision on such a petition within 210 days, and the delay is not due to the employee's bad faith, the employee may file a de novo action in federal court.

Thus, plaintiff cannot use the anti-retaliation provision of the FRSA for the purpose of showing that Johnson's alleged behavior is relevant or discoverable. Since plaintiff has not actually asserted a claim under the FRSA, and is time-barred from doing so, he cannot be permitted to pursue such a claim under the guise of his FELA action.

**C.    Evidence regarding Johnson's management style or related issues is preempted by the Railway Labor Act.**

Even to the extent they were otherwise relevant, matters related to Johnson's management style or alleged complaints about that management style are governed by a collective bargaining agreement and preempted by the RLA. Congress enacted the RLA to provide a comprehensive framework for the "prompt and orderly" resolution of labor disputes in the railroad industry. *Hawaiian Airlines, Inc., v. Norris,* 512 U.S. 246, 252 (1994). To do so, the RLA established mandatory administrative procedures that govern two classes of labor disputes – minor disputes and major disputes. *Id.* at 252-53. Minor disputes, which are the type of disputes reflected in the complaints about Johnson's management style, "gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Id.* Therefore, a minor dispute is presented if it depends on a right found in a CBA or "implicate[s] practices, procedures, implied authority or codes of conduct that are part of the working relationship." *Fry v. Airline Pilots' Ass'n,* 88 F.3d 831, 836 (10th Cir. 1996).

Plaintiff here admitted at his deposition that his employment at Union Pacific was subject to a collective bargaining agreement. Holloway Dep. 81:10-13. He also knew that the CBA contained a grievance procedure. *Id.* at 81:14-20. Thus, since those grievance procedures provide the exclusive remedy for plaintiff's complaints about Johnson, plaintiff cannot pursue a remedy for them in this FELA action. *State ex rel. Union Pac. R. Co., v. Dierker*, 961 S.W.2d 816 (Mo. banc 1998). Claims of wrongful discharge, retaliation or harassment for filing a lawsuit are

6400678
- 13 -

exclusively claims under the RLA. *Monroe v. Missouri Pacific R. Co.*, 115 F.3d 514, 519 (7th Cir. 1997); *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 302 (1972). This is why evidence related to such issues must be excluded from evidence—such issues are preempted by federal law. *See Lewy v. Southern Pac. Transp. Co.*, 799 F.2d 1281, 1289 (9th Cir. 1986).

Here, then, for this reason as well, the scope of Johnson's deposition should be limited so as to exclude matters related Johnson's management style or alleged complaints about that management style. Any issues related to discipline or harassment are clearly inadmissible and, therefore, not subject to discovery. *See Miscellaneous*, 197 F.3d at 925 (recognizing that "discovery may not be had on matters irrelevant to the subject matter involved in the pending litigation"); *Mayberry v. SSM Health Businesses*, No. 4:15-CV-1680-CEJ, 2016 WL 3458164, at *2 (E.D. Mo. June 24, 2016) (same). To the extent plaintiff or other Union Pacific employees have complaints about Johnson's management style, or believe that he harassed or threatened them, their exclusive remedy (assuming their claim does not fall within the whistleblower provision of the FRSA discussed above) is to utilize the procedures established in the CBA and RLA. This FELA action, by contrast, is limited to plaintiff's claim for the personal injuries he claims to have suffered in the December 17, 2012 incident—and plaintiff's discovery in this case should be similarly limited.

## Conclusion

For the reasons stated above, Union Pacific requests that the Court enter a protective order limiting the scope of plaintiff's proposed deposition of Nels Johnson and prohibiting plaintiff from questioning Johnson about irrelevant matters related to Johnson's so-called "management style."

Respectfully submitted,

THOMPSON COBURN LLP

By _____
     Nicholas J. Lamb, MO - 33486
     William D. Hakes, MO – 37088
     One US Bank Plaza
     St. Louis, Missouri  63101
     314-552-6000
     FAX 314-552-7000
     nlamb@thompsoncoburn.com
     whakes@thompsoncoburn.com

Attorneys for Defendant
Union Pacific Railroad Company

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing instrument was mailed postage prepaid to Theodore Dearing, 211 South Central Avenue, Suite 200, Clayton, MO and Louis E. Jungbauer, Yaeger & Jungbauer Barristers, PLC 4601 Weston Woods Way, Saint Paul, MN  55124 this 9th day of September, 2016.

_____