UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MICHAEL L. HOLLOWAY,<br><br>      Plaintiff,<br><br>v.<br><br>UNION PACIFIC RAILROAD CO.,<br><br>      Defendant. | Civil Action No. 4:15-cv-01741-HEA |

**DEFENDANT UNION PACIFIC RAILROAD COMPANY'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Plaintiff's motion to compel is without merit. It starts by applying the wrong legal standard for discovery. It then claims, with almost no legal authority in support, that plaintiff is entitled to numerous documents and information relating to a variety of topics, from Union Pacific's investigation of plaintiff's incident to information about government reporting or the storage of generators like the one plaintiff was moving at the time of his incident.

All of these arguments should be rejected. Union Pacific's investigation was completed in anticipation of litigation, meaning that it is protected by the work product doctrine. Further, information about storage of generators and government reporting is simply irrelevant to the issue to be determined in this case, which is whether Union Pacific's negligence caused plaintiff to be injured while he was moving a generator. Finally, Union Pacific has in fact provided much of the information plaintiff seeks—from documents to witness names to a copy of the government report at issue—so plaintiff in fact can identify nothing additional to which he is

6448197

entitled. For all these reasons, then, and the additional reasons discussed below, plaintiff's motion should be denied.[1]

<u>**Argument**</u>

**A.      Plaintiff relies on the wrong version of Rule 26.**

Like his response to Union Pacific's motion for protective order (Doc. #26), plaintiff's motion to compel (Doc. #27) relies on the wrong version of Rule 26 in describing the scope of discovery. Under Rule 26, the scope of discovery is limited to any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1). In other words, to be discoverable, evidence must be (1) relevant, (2) non-privileged, and (3) proportional. *See id.*

Plaintiff is incorrect when he claims that—in addition to these three categories—the scope of discovery includes information or documents that are "reasonably calculated to lead to the discovery of admissible evidence." Pl.'s Mot. (Doc. #27) 4. While prior versions of the Rule did include a provision for discovery of information that appears "reasonably calculated to lead to the discovery of admissible evidence," that provision was deleted when the amendments to Rule 26 took effect in December 2015. *See* Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendments. Because the phrase had been used "incorrectly" in defining the scope of discovery, thereby making that scope so wide as to "swallow any other limitation on the scope of the discovery," it had to be removed. *Id.* Plaintiff's continued reliance on this phrase is, therefore, improper.

---

[1] Plaintiff's motion discusses at times the alleged "antics" of his supervisor Nels Johnson. *See* Pl.'s Mot. (Doc. #27) 3-4. It also attaches a petition signed by plaintiff and others related to Johnson's alleged management style. *See* Pl's. Ex. 9 (Doc. #27-10). However, plaintiff does not discuss in his motion any discovery requests related to these issues, and even if he had, the Court has already granted Union Pacific a protective order excluding these issues from discovery. Order (Doc. #28).

B.   **Union Pacific's investigation of plaintiff's incident was completed in anticipation of litigation and is protected by the work product doctrine.**

Plaintiff's Interrogatory Nos. 2 and 3 and Requests for Production Nos. 4 and 9 ask for the identity of the persons who investigated plaintiff's incident on behalf of Union Pacific, the dates of their investigation, and a summary of the facts they learned in the investigation. *See* Pl.'s Ex. 1 (Doc. #27-2); Pl's Ex. 2 (Doc. # 27-3). These requests also seek the identity of any witnesses interviewed by Union Pacific, the production of any statements taken from those witnesses, and the production of the files compiled and maintained by plaintiff's supervisors at Union Pacific as a result of the investigation. *Id.* Because, however, all of this information is protected by the attorney-client privilege or work product doctrine, plaintiff's motion should be denied.

Rule 26 protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representatives." Fed. R. Civ. P. 26(b)(3)(A). Material that falls within this definition is only discoverable if the party seeking discovery "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* Further, in addition to the tangible work product protected by Rule 26, intangible work product that consists of "counsel's mental impressions, conclusions, opinions, or legal theories" is also protected under the work product doctrine. *Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). This type of material "enjoys almost absolute immunity and can be discovery only in very rare and extraordinary circumstances ...." *Id.* Finally, the attorney-client privilege "protects confidential communications between a client and her attorney made for the purpose of facilitating the rendition of legal services to the client." *U.S. v. Yielding*, 657 F.3d 688, 707 (8th Cir. 2011).

Because, contrary to plaintiff's suggestion, railroad investigations of accidents or injuries are completed in anticipation of litigation rather than in the usual course of a railroad's business, information and documents generated during such investigations are generally subject to work-product protection. As Union Pacific stated in its objections to plaintiffs' discovery requests, the Supreme Court has recognized that accident or injury investigations are outside the scope of a railroad's regular course of business. *Palmer v. Hoffman*, 318 U.S. 109, 113-14 (1943). Other courts have similarly recognized that, because litigation frequently results from accidents or injuries involving railroads, a railroad's investigation into such an incident is by definition completed in anticipation of litigation:

> The anticipation of the filing of a claim against a railroad, when a railroad employee has been injured or claims to have been injured on the job, is undeniable, and the expectation of litigation in such circumstances is a reasonable assumption.

*Almaguer v. Chicago, R.I. & P. R. Co.*, 55 F.R.D. 147, 149 (D. Neb. 1972); *see State ex rel. Terminal R. Ass'n of St. Louis v. Flynn*, 257 S.W.2d 69, 74 (Mo. banc 1953) (holding in FELA case that photographs taken of injury scene were privileged because they were not taken in the "usual and ordinary business" of the railroad but instead "in preparation for the defense of anticipated litigation").

Plaintiff tries to distinguish *Palmer* by claiming that it "stands for the proposition that injury and accident investigations are a part of the regular course of business for a railroad." Pl.'s Mot. (Doc. #27) 6. But this gets it exactly backwards. The Supreme Court in *Palmer*, as just discussed, held that accident investigations are *not* a part of a railroad's regular course of business. *See* 318 U.S. at 113-14. It follows, then, again as just discussed, that such investigations are instead completed in anticipation of litigation, and that documents and information generated by such investigations are protected by the work product doctrine.

Courts have in fact precluded discovery of the type of materials sought by plaintiff here for exactly this reason. Numerous courts, for example, have concluded that third-party witness statements taken by a party or its attorney are protected by the work product doctrine. *See Hickman v. Taylor*, 329 U.S. 495, 512 (1947) (concluding that witness statements obtained by attorneys are protected by the work product doctrine); *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000) (same); *Sauer v. Burlington N. R. Co.*, 169 F.R.D. 120, 122–23 (D. Minn. 1996) (same); *see also Alltmont v. United States*, 177 F.2d 971, 976 (3d Cir. 1949) (concluding that witness statements obtained by parties themselves, as opposed to their attorneys, are protected by the work product doctrine); *Gargano v. Metro-N.*, 222 F.R.D. 38, 40 (D. Conn. 2004) (same); *Sersted v. Am. Can Co.*, 535 F. Supp. 1072, 1080 (E.D. Wis. 1982) (same); *Almaguer*, 55 F.R.D. at 149 (same); *Brandstetter v. Nat'l R.R. Passenger Corp.*, No. CIV.A. 86-2893, 1987 WL 25422, at *1 (D.D.C. Nov. 19, 1987) (same). Courts have similarly concluded that the work product doctrine protects the identity of persons from whom statements have been taken, along with the identity of persons interviewed during the course of an investigation. *Stokes v. Renal Treatment Centers-Illinois, Inc.*, 1998 WL 917523, at *2 (E.D. Mo. Sept. 16, 1998); *1100 W., LLC v. Red Spot Paint & Varnish Co.*, No. 1:05CV1670LJMWTL, 2007 WL 2904073, at *2 (S.D. Ind. May 18, 2007); *Lamer v. Williams Commc'ns, LLC*, No. 04-CV-847-TCK-PJC, 2007 WL 445511, at *2 (N.D. Okla. Feb. 6, 2007); *State ex rel. Atchison, Topeka and Santa Fe Ry. Co. v. O'Malley*, 898 S.W.2d 550, 553-54 (Mo. banc 1995); *State ex rel. Hackler v. Dierker*, 987 S.W.2d 337, 339 (Mo. App. E.D. 1998). And courts have found that the doctrine protects against the disclosure of the contents of investigators' files. *See Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997) (assuming without deciding that investigator's file related to railroad grade crossing accident was protected by the work-product privilege); *1100 W., LLC*, 2007 WL

2904073, at *1 (refusing to compel a party to disclose a list of documents in an investigator's file); *see also State ex rel. Safeco Nat'l Ins. Co. of Amer. v. Rauch*, 849 S.W.2d 632, 635 (Mo. App. E.D. 1993) (declining to compel response to request for investigation file because the request was not sufficiently specific and could include work product).

Plaintiff here provides no reason why, contrary to this authority, he should be entitled to this type of information. He cites no authority from the Eighth Circuit or Missouri authorizing this type of discovery, nor any authority addressing accident or injury investigations in the context of FELA litigation. Further, although his motion seems to imply otherwise, plaintiff's discovery requests regarding witness interviews, statements, and investigation are not limited to non-attorney investigators or to investigations not in anticipation of litigation. They instead apply broadly to any investigation or interview, regardless of whether they were conducted by an attorney or someone else, and regardless of when or why they were completed. Thus, they necessarily include within their scope documents and information covered by both the attorney-client privilege and work product doctrine.

Next, plaintiff cannot establish—nor has he attempted to do so—that he has a substantial need for any of the material he seeks. To the contrary, he admits that Union Pacific has disclosed the name and contact information of witnesses with knowledge of facts related to his lawsuit. He also does not dispute that Union Pacific has produced numerous documents in response to his requests for production.

Plaintiff in fact has no reason to seek discovery about Union Pacific's investigation. Since he already knows which witnesses Union Pacific believes have relevant knowledge, he does not need to know who Union Pacific interviewed or took statements from. Similarly, although he claims that an investigation file might have certain documents he claims are

6448197

relevant, like "duty rosters" or "general orders" (Pl.'s Mot. (Doc. #27) 7), he has not explained why he cannot simply request those documents themselves rather than requesting the entire investigation file. Because plaintiff has failed to explain why information and documents relating to Union Pacific's investigation are not privileged, and also why he needs them even if they were not privileged, his motion should be denied.

C.   **Union Pacific will agree to provide an amended answer to Interrogatory No. 1.**

Plaintiff complains in his motion that Union Pacific has failed to identify in its answer to Interrogatory No. 1 which of the six witnesses identified in its initial disclosures have "knowledge of the incident" as opposed to knowledge about other relevant issues. Pl.'s Mot. (Doc. #27) 7-8. This is different from the issue he raised in his attempt to resolve, which was that he believed he was entitled to contact information for the witnesses (even though most are employed by Union Pacific. *See* Pl.'s Ex. 7 (Doc. #27-8). Nonetheless, Union Pacific will agree to provide an amended answer to Interrogatory No. 1 specifying which of the witnesses disclosed have "knowledge of the incident."

D.   **Union Pacific has adequately answered plaintiff's contention interrogatories.**

Plaintiff takes issue with Union Pacific's answers to interrogatories 4, 5, 7, and 9, all of which are contention interrogatories seeking the bases for defenses Union Pacific has asserted. Union Pacific responded to these interrogatories by citing to presently known specific documents and specific witnesses that provide support for Union Pacific's defenses. Union Pacific also stated that it would supplement the responses after plaintiff's deposition was completed. Plaintiff's deposition has not yet been completed—the parties agreed to suspend it before it was completed in order to accommodate plaintiff's counsel's flight schedule. *See* Holloway Dep. 357:9-22 (relevant excerpt attached as Ex. A).

6448197

- 7 -

In light of all this, plaintiff has failed to explain why Union Pacific's answers are not sufficient. He cites no authority in support of his claim that Union Pacific's answers are not adequate. Nor does he explain why he is entitled to a narrative explanation rather than a citation to documents and witnesses, which is permitted under Rule 33(d).

In any event, because these interrogatories are contention interrogatories, Union Pacific should not be required to provide amended answers at this time. As this Court has previously held, "contention interrogatories need not be answered until discovery is complete or nearly complete in accordance with Fed. R. Civ. P. 33(a)(2)." *Coleman v. Dental Org. for Conscious Sedation, LLC*, No. 4:10CV798 TIA, 2011 WL 2600407, at *1 (E.D. Mo. June 29, 2011); *accord Bituminous Cas. Corp. v. Scottsdale Ins. Co.*, No. 1:12-CV-84-SNLJ, 2013 WL 1411544, at *1 (E.D. Mo. Apr. 8, 2013); *Monsanto Co. v. E.I. Du Pont De Nemours & Co.*, No. 4:09CV00686 ERW, 2012 WL 27936, at *1–2 (E.D. Mo. Jan. 5, 2012). Thus, even to the extent amendment to Union Pacific's answers is eventually necessary, the time to do so is at the end of discovery, not now.

### E. Plaintiff's request for documents relating to the "storage" of generators is irrelevant and overbroad.

Plaintiff claims that he is entitled to a response to his Request for Production No. 18, which seeks "all written materials used by [Union Pacific] to instruct its Signal Department employees on how to properly store electrical generators." *See* Pl.'s Ex. 5 (Doc. # 27-6). As Union Pacific explained in its objection to this request, however, the "storage" of generators is not relevant to this case. Plaintiff claims to have injured his back while ***moving*** a generator. *See* generally Compl. (Doc. #1). Thus, the ***storage*** of generators is not relevant to his claim. In fact, Plaintiff even admitted that his complaint about alleged improper storage of the generator did not cause or contribute to his alleged injury, testifying:

```
7     Q. And what did you believe was improper
8        storage about it [the building] after the accident?
9     A. I didn't think it was a proper flammable
10       building.
11    Q. But the fact that it was not a proper
12       flammable building didn't cause or contribute to
13       your injuries, did it?
14    A. No, sir.
```

Holloway Dep. 342: 7-14

Plaintiff's attempt to justify his request does not change his testimony or this conclusion. Documents related to "facilities used to store generators, or when they should be stored or why" (Pl.'s Mot. (Doc. #27) 9) again have nothing to do with the issues in this case. Nor does the "design of ... storage buildings" (*id.*) have anything to do with the issues in this case. This is not a products or premises liability case. It is an FELA case. Thus, the issue to be determined in this case is whether Union Pacific was negligent in causing plaintiff's incident while he was moving a generator, not whether it was negligent in how it stored generators or designed its buildings.

Further, plaintiff does not even attempt to address Union Pacific's objections that went beyond relevance. Specifically, although Union Pacific objected to this request on the basis that it was overbroad and unlimited in time and scope, plaintiff did not address these objections in his motion. He instead claims, apparently, that he is entitled to all documents related to the "storage" of generators no matter when, where, or why they were generated or used. Since such a request is plainly overbroad, plaintiff's motion related to Request for Production No. 18 should be denied for this reason as well.

**F.     Plaintiff has not provided a basis for overruling Union Pacific's objection to plaintiff's Request for Admission No. 18.**

Plaintiff's new[2] arguments about his Request for Admission No. 18, which asks Union Pacific to admit that it did not provide to plaintiff a copy of the form it used to report his incident to the Federal Railroad Administration ("FRA"), are unavailing for two reasons. First, plaintiff fails to explain how the issue is relevant. Whether or not Union Pacific personally provided plaintiff with a copy of the FRA report has nothing to do with whether Union Pacific's negligence caused plaintiff's incident. Further, as Union Pacific explained in its objection, federal law specifically prohibits the use of reports of this nature in civil litigation. *See* 49 U.S.C. § 20903; *see also* 49 C.F.R. § 225.7(b).

Second, plaintiff is simply wrong when he claims in his motion that he "does not have a copy [of the report] in his possession" and that he does not know if one was ever created. Pl.'s Mot. (Doc. #27) 10. Union Pacific in fact produced a copy of the report at issue in its document production, as demonstrated by the Bates-stamped copy attached hereto. *See* Ex. B attached hereto. Thus, contrary to plaintiff's suggestion, plaintiff does not need a response to Request for Admission No. 18 to know whether Union Pacific created the FRA report or provided it to plaintiff. He already knows—or at least should know—the answers to those questions.

## Conclusion

For the reasons stated above, the Court should deny plaintiff's motion to compel and grant Union Pacific such further and additional relief as is just under the circumstances.

---

[2] Plaintiff did not raise his complaint about Union Pacific's response to Request for Admission No. 18 in his attempt to resolve. *See* Pl.'s Ex. 7 (Doc. #27-8). He only raised issues related to Union Pacific's responses to plaintiff's interrogatories and requests for production. *See id.*

Respectfully submitted,

THOMPSON COBURN LLP

By _____
Nicholas J. Lamb, MO - 36486
William D. Hakes, MO – 37088
One US Bank Plaza
St. Louis, Missouri  63101
314-552-6000
FAX 314-552-7000
nlamb@thompsoncoburn.com
whakes@thompsoncoburn.com

Attorneys for Defendant
Union Pacific Railroad Company

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing instrument was mailed postage prepaid to Theodore Dearing, 211 South Central Avenue, Suite 200, Clayton, MO and Louis E. Jungbauer, Yaeger & Jungbauer Barristers, PLC 4601 Weston Woods Way, Saint Paul, MN  55124 this 21st day of October, 2016.

_____