UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL L. HOLLOWAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 4:15CV1741 HEA |
| ) | |
| UNION PACIFIC RAILROAD CO., ) | |
| ) | |
| Defendant. ) | |

**OPINION, MEMORANDUM AND ORDER**

Plaintiff is suing his employer, Defendant Union Pacific Railroad, for alleged violations of the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq*. Defendant has moved for summary judgment, [Doc. No. 30]. Plaintiff opposes the Motion. For the reasons set forth below, the motion will be granted.

**Facts and Background**

The following facts are not disputed, unless otherwise noted. Plaintiff claims to have suffered the injury at issue in this case on December 17, 2012, while moving a generator from Union Pacific's depot in Scott City, Missouri, to another building. Plaintiff alleges in his complaint that Union Pacific was negligent in that it (1) failed to provide a reasonably safe place to work; (2) failed to provide reasonably safe equipment; (3) failed to properly instruct, educate, or train its

employees; (4) failed to warn Plaintiff of dangers that confronted him; (5) failed to provide proper supervision and training; (6) failed to adopt or enforce safe customs and practices; and (7) assigned plaintiff work that was unsafe.

Plaintiff began his career with Defendant in 1979. He joined the signal department in 1988. In 2011, he became a Signal Forman.

Before his incident occurred, Plaintiff had been told to move several generators out of the depot at Scott City because they contained gasoline and should not be kept in an occupied building. He was first told to move the generators in June or July of 2012, which was about six months before his incident. Plaintiff was again told in a meeting on December 13, 2012, that the generators needed to be moved.

When plaintiff started work on December 1 7, 2012, he did not initially plan on moving any generators. Plaintiff arrived at work at around 7:00 a.m., participated in a conference call that lasted about ninety minutes, and then checked his email and filled out an expense report and some other paperwork. It was not until about 10:00 or 10:30 a.m. on December 17, 2012, when he decided to move one of the generators. Plaintiff decided to move the generator on December 17, 2012, because he was worried about being disciplined and he wanted to be able to say that he had at least started on the task of moving the generators.

Plaintiff decided to move one of the two small generators that he thought he could move by himself. To move the generator, Plaintiff first got it out of the depot and loaded it onto his pickup truck, using a pallet as a "makeshift ramp" to help him get the generator into the bed of the truck. After loading the generator in his truck, plaintiff then drove his truck one hundred yards or so over to the signal cabinet where he had decided to put the generator. He then slid the generator out of the pickup and dropped it on the ground. After dropping the generator on the ground, Plaintiff dragged the generator over to the door of the signal cabinet, got beside it, and pushed it up to the edge of the door. He was going to lift the generator and drag it inside the signal cabinet but, as he squatted down, he felt pain in his back.

Plaintiff testified that he had sufficient time to do the job of moving the generator safely. At the time of his incident, Plaintiff was moving at a safe speed and was not rushing. He was alert, attentive, and focused on the task of moving the generator.

Plaintiff claims that the railroad should have provided a ramp or assistive devices like a boom on his truck, a two-wheeled dolly, or a forklift. He also claims that he should have been provided with additional help.

Plaintiff assigned the task of moving the generators to himself. No one at the railroad gave Plaintiff instructions on how to move the generators, or said that

they had to be moved by a certain day.  No one at the railroad prevented plaintiff from getting help, a boom, a ramp, a dolly, or a forklift, for the purpose of moving the generators.  All decisions on how the generator was going to be moved were made by Plaintiff.

Before his incident, Plaintiff did not anticipate any problems with the task of moving the generator.  Plaintiff completed a "lone worker job briefing" before his incident in which he determined that he did not need any special tools or lifting devices to do the job safely.  The only risk Plaintiff identified in his "lone worker job briefing" was the need to use proper lifting techniques-he did not identify risks like the lack of a ramp or the need for additional help or assistive devices.

Before his incident occurred, Plaintiff had never complained that he needed a ramp, boom, dolly, forklift, or additional help, to move the generator.  Plaintiff did not try to obtain any special tools before moving the generator. He did not try to obtain a ramp, boom, dolly, or forklift, before moving the generator.  Even though there were about ten members of a maintenance-of-way gang in the depot on the morning of his incident, Plaintiff did not ask anyone to help him move the generator.

At the time of his incident, plaintiff was a supervisor over numerous employees and had authority to direct them to do the work or to assist him in doing the work.  Plaintiff believed before he started moving the generator on the day of

his incident that he could move the generator by himself, without any special tools, and do so safely without injuring himself.

Before his incident, Plaintiff had moved generators by himself, and he did so without injuring himself. Plaintiff believed he could move the generator safely on the day of his incident, just as he had done in the past. According to plaintiff, ". . . I've moved generators before by myself, I didn't see any reason I couldn't move it at this time by myself. . . . I didn't see any reason that it would be different this time."

**Standard of Review**

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those

facts. *Id.* Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The existence of a mere scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## Discussion

Plaintiff has sued Defendant, alleging violations of the Federal Employers' Liability Act (FELA). His primary allegation is that Defendant breached its non-delegable duty to provide Plaintiff with a reasonably safe place to work, which contributed to his December 2012 workplace injury.

Plaintiff's FELA claim is premised on his December 2012 injury, in which he allegedly hurt his back while moving a generator. According to Plaintiff, that

injury was due in whole or in part to Defendant's negligence in failing to provide him with adequate assistance; in failing to provide him with proper tools or equipment; in removing two wheels from the generator; using threats to apply unreasonable pressure to Plaintiff; and in storing the generators in an unsafe location, thus making it necessary for Plaintiff to move them. Defendant moves for summary judgment, arguing that it was not negligent in any respect and that the injury was not reasonably foreseeable, and therefore not actionable.

Enacted in 1908, FELA provides railroad employees with a federal cause of action for injuries "resulting in whole or in part from the negligence" of the railroad. 45 U.S.C. § 51. The statute imposes upon employers a continuous duty to provide a reasonably safe place to work. *Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 889 (8th Cir. 2012). FELA is to be liberally construed, but it is not a workers' compensation statute, and the basis of liability is "negligence, not the fact that injuries occur." *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994). So, Plaintiff must prove the customary common law elements of a negligence claim: duty, breach, foreseeability, and causation. *Crompton v. BNSF Ry. Co.*, 745 F.3d 292, 296 (7th Cir. 2014); *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 87 (2d Cir. 2006).

However, the Court applies a relaxed standard of causation under the FELA. *CSX Transp., Inc. v. McBride*, 564 U.S. 685 (2011). "Under [FELA] the test of a

jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Id.*

Defendant has submitted a Statement of Uncontroverted Material Facts in support of its Motion for Summary Judgment, in which Defendant sets forth specific references to deposition testimony. Plaintiff does not specifically respond to Defendant's Statement of Uncontroverted Facts, rather, Plaintiff has filed an opposition to summary judgment with his own Statement of Facts. This, however, is insufficient to controvert Defendant's Statement of Uncontroverted Material Facts.

Pursuant to this Court's Local Rule 7-4.01(E),

> Every memorandum in opposition [to a motion for summary judgment] shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

Plaintiff testified in his deposition that he had previously moved generators by himself without injury. He did not anticipate any trouble in moving the generator, and that he could move it safely. He admits he had sufficient time to move the generator and that at the time, he was moving at a safe speed at the time

of his injury. He further testified that no one told him how to move the generator, nor that he could not use additional equipment or help. He did not ask for help nor did he assign employees whom he supervised the task of moving the generator or helping him move the generator. He completed a "lone worker job briefing" in which he determined that he did not need any special tools or lifting devices to perform the job safely. Plaintiff cannot, in hindsight reassess his decisions in order to establish Defendant's liability.

Likewise, Plaintiff fares no better on his claim that Defendant removed the wheels from the generator. There is no evidence that this particular generator originally had wheels. Plaintiff's sole support for this claim is an unauthenticated parts list which indicates that certain generators could have wheels. Speculation can never overcome facts; Plaintiff's argument is pure speculation with respect to Defendant's "removal" of the wheels.

Plaintiff admits he had sufficient time within which to move the generators. He did not do so from June or July, 2012 until December 17, 2012. Plaintiff's claim that he was being pressured into moving the generators is belied by the facts regarding the assignment of transporting the generators to the actual performance of the task.

Similarly, Plaintiff's claim that he was being unreasonably pressured is neither supported by admissible evidence nor reasonable in light of his testimony

that he had had sufficient time within which to move the generators. Nowhere does Plaintiff explain the lack of movement prior to December, 2012. Rather, Plaintiff attempts to blame Defendant for the lack of movement, while the record establishes that Plaintiff began moving the generator because he was confronted by Johnson for his procrastination. He wanted to at least show some action in moving the generators when he attempted to move the first generator on December 17, 2012.

Finally, Plaintiff argues that the generators should not have been stored in an unsafe location, which in turn required the movement of the generators to an unoccupied building. As Defendant correctly argues, this first time argument in response to summary judgment cannot carry Plaintiff's shifted burden. This claim was not included in the allegations of negligence in Plaintiff's Complaint. As such, Plaintiff cannot now set out a newly alleged claim to avoid summary judgment. *Holman v. Coca-Cola Enterprises, Inc.*, 4:05CV1032 HEA 2006 WL 2460795, at *5 (E.D. Mo. August 23, 2006), *aff'd*, 258 F.App'x 919 (8th Cir. 2007).

Furthermore, even assuming Plaintiff could raise the storage issue, this fact has nothing to do with the cause of Plaintiff's injury. The injury would have occurred regardless of where the generators were stored and whether that storage was a safe location or not.

Plaintiff's claim of foreseeability also fails. Plaintiff had previously moved generators by himself. He admitted that he did not think he needed additional help

or additional equipment.  Defendant had provided training on proper lifting techniques.  While Plaintiff argues that this demonstrates that Defendant could have foreseen his injury, Defendant's position is clearly correct.  Because Defendant provided the training, it would be reasonable to believe that Plaintiff would have assessed the situation and asked for help if he thought, through the training he had previously had, that he needed assistance by way of equipment or manpower.  Plaintiff himself decided when and how to move the generator.  Plaintiff believed moving the generator himself was safe; Defendant cannot therefore be regarded as having been able to foresee something for which Plaintiff made the salient decisions.

Viewing the facts in the light most favorable to Plaintiff, clearly there are no disputed facts that could give rise questions for a jury to resolve.  The facts establish that Defendant was neither negligent nor could have foreseen Plaintiff's injury.  Under the FELA, Defendant is entitled to judgment as a matter of law.

**Conclusion**

Based upon the foregoing analysis, Defendant's Motion for Summary Judgment will be granted.  Plaintiff has failed to specifically controvert Defendant's Motion with admissible evidence that Defendant was negligent under the Federal Employer's Liability Act.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, [Doc. No. 30], is granted.

A separate judgment is entered this same date.

Dated this 13th day of July, 2017.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGEy